1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TERI HARRAL,

11          Plaintiff,                    No. 2:09-cv-02814 KJN

12      v.

13
     MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15          Defendant.                    ORDER
     _____/

16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").[1]  (Dkt. No. 22.)  In her motion for summary judgment,

20   plaintiff contends that the administrative law judge (the "ALJ"), erred by failing to properly:

21   (1) assess plaintiff's residual functional capacity ("RFC"); and (2) question the vocational expert.

22   The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

23   judgment.  (Dkt. No. 23.)

24   _____

25          [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
     proceed before a United States Magistrate Judge.  (Dkt. Nos. 8, 11.)  This case was reassigned to
26   the undersigned by an order entered February 9, 2010.  (Dkt. No. 12.)

For the reasons stated below, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands this matter for further proceedings.

I.      BACKGROUND[2]

Plaintiff was 50 years old at the time of the ALJ's decision denying plaintiff's application for disability benefits.  (See Administrative Transcript ("AT") 50.)  Plaintiff had completed high school, had some college level education, and had obtained a real estate license through the California Department of Real Estate.  (AT 34-35, 50.)  In terms of previous employment, plaintiff had worked as a loan specialist for eight years, an administrative secretary assistant for one year, an appointment scheduler for one year, and an owner of a juice bar for three years.  (AT 59-60.)  In addition, plaintiff had worked for three years as a realtor.  (AT 38.)

Generally, plaintiff alleges pain in both elbows, arms, and hands resulting from carpal tunnel syndrome and bilateral epicondylitis.[3]  (See Pl.'s Mot. for Summ. J. ("Pl.'s Motion") at 1.)

A.      Procedural Background

On March 14, 2006, plaintiff applied for Disability Insurance Benefits.  (AT 81.)  The Social Security Administration denied plaintiff's applications initially and upon

_____

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties' respective motions.

Additionally, to the extent the undersigned uses the present tense in referring to or describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's characterizations of the same, the undersigned clarifies that such references are to plaintiff's conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless otherwise indicated.

[3]  Epicondylitis is the "[i]nflamation of an epicondyle."  See Thomas Lathrop Stedman, Stedman's Medical Dictionary, 603 (Lipincott, Williams & Wilkins, 27th ed. 2000).  An epicondyle is a "projection from a long bone near the articular extremity above or upon the condyle."  See id.

reconsideration. (AT 81-82.) Plaintiff filed a request for a hearing. (AT 97.) The ALJ

conducted two hearings in this case, although the first was quite abbreviated. Plaintiff, who was

represented by counsel, testified at both hearings. The first hearing was held on February 28,

2008, wherein plaintiff testified regarding her address, education, prior work experience, and

relevant medical treatment. (AT 33-43.) However, during plaintiff's testimony the ALJ noted

that the medical records before him were not complete. Accordingly, the ALJ continued the

matter and rescheduled the hearing to allow plaintiff time to supplement the administrative

record. (AT 43.) The second hearing was held on September 17, 2008, at which time all records

had been received. (See AT 47-48.) Additionally, a vocational expert ("VE") testified at the

September 17, 2008 hearing.

In a decision dated November 28, 2008, the ALJ determined that plaintiff was not

disabled.[4] (AT 8-14.) In reliance on the VE's testimony, the ALJ found that plaintiff was

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income ("SSI") is paid
to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both provisions,
disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
"a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R.
§§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The
following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful
activity? If so, the claimant is found not disabled. If not, proceed
to step two.
Step two: Does the claimant have a "severe" impairment?
If so, proceed to step three. If not, then a finding of not disabled is
appropriate.
Step three: Does the claimant's impairment or combination
of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App.1? If so, the claimant is automatically
determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past
work? If so, the claimant is not disabled. If not, proceed to step
five.
Step five: Does the claimant have the residual functional
capacity to perform any other work? If so, the claimant is not
disabled. If not, the claimant is disabled.

3

1   capable of performing past relevant work.  (AT 13.)  The ALJ's decision became the final

2   decision of the Commissioner when the Appeals Council denied plaintiff's request for review.

3   (AT 1.)  Plaintiff subsequently filed this action.

4           B.       Summary of the ALJ's Findings

5           The ALJ conducted the required five-step evaluation and concluded that plaintiff

6   was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff

7   had not engaged in substantial gainful activity since August 15, 2005, the alleged date of onset.

8   (AT 10.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairment:

9   bilateral epicondylitis.  (AT 10.)  At step three, the ALJ determined that plaintiff's impairment

10  did not meet or medically equal any impairment listed in the applicable regulations.  (AT 11.)

11          The ALJ further found that plaintiff has the RFC to perform light work.[5]  (Id.)

12  Specifically, the ALJ found that plaintiff is able to:

13              lift, carry, push and pull 20 pounds occasionally and
                10 pounds frequently; stand/walk for eight hours in
14              an eight-hour day with normal breaks; sit for eight

15  _____

16  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

17          The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
18  evaluation process proceeds to step five.  Id.

19          [5]  The applicable regulation, 20 C.F.R. § 416.967(b), defines "light work" as follows:

20              (b) Light work.  Light work involves lifting no more than 20
                pounds at a time with frequent lifting or carrying of objects
21              weighing up to 10 pounds.  Even though the weight lifted may be
                very little, a job is in this category when it requires a good deal of
22              walking or standing, or when it involves sitting most of the time
                with some pushing and pulling of arm or leg controls.  To be
23              considered capable of performing a full or wide range of light
                work, you must have the ability to do substantially all of these
24              activities.  If someone can do light work, we determine that he or
                she can also do sedentary work, unless there are additional limiting
25              factors such as loss of fine dexterity or inability to sit for long
                periods of time.
26

4

> hours in an eight-hour day with normal breaks; frequently reach below shoulder level, grasp and bilaterally finger; and occasionally work above shoulder level and is precluded from crawling and climbing ladders, ropes and scaffolding.

(AT 13.)  In assessing plaintiff's RFC, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible "to the extent they are inconsistent with the above residual functional capacity assessment."  (AT 12.)  Further, the ALJ noted that he found certain medical opinion evidence persuasive, namely a 2007 medical report produced by treating physician Dr. William Snider, and a 2006 RFC assessment by a State agency non-examining physician.  (AT 12-13.)

Having assessed plaintiff's RFC, the ALJ determined at step four that plaintiff is capable of performing her past relevant work as a loan specialist, a receptionist, an appointment scheduler, a small business owner, a realtor, and an administrative assistant.  (AT 13.)  Based on the VE's testimony, the ALJ found that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (Id.)  Because of the finding at step four, the ALJ did not reach step five of the inquiry.

II.   STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews,

53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings

of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also

McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can

support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."

Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

However, the court "must consider the entire record as a whole and may not affirm simply by

isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting

Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

504 F.3d 1028, 1035 (9th Cir. 2007).

III.    ANALYSIS

As noted above, plaintiff alleges that the ALJ erred by failing to properly:

(1) assess plaintiff's RFC; and (2) question the vocational expert. The undersigned notes at the

outset that the first issue raised by plaintiff, the ALJ's determination of plaintiff's RFC, actually

alleges a number of errors. The undersigned addresses each alleged error in turn.

A.    The ALJ's RFC Assessment

Plaintiff contends that: (1) the ALJ rejected and mischaracterized the medical

opinions of her treating physician, Dr. William Snider; (2) failed to include the functional

limitations assessed by Dr. Robert Blum, an examining physician; (3) failed to include the

functional limitations assessed by Dr. C.R. Dann, a nonexamining physician; and (4) failed to

credit plaintiff's testimony, which plaintiff alleges is consistent with the medical evidence in the

record. (Pl.'s Motion at 10.) Plaintiff argues that the result of these errors is a flawed RFC

assessment. The Commissioner responds that the ALJ properly evaluated the opinions of Drs.

6

1  Snider, Blum, and Dann, as well as plaintiff's subjective accounts of her symptoms.  (Def.'s

2  Cross-Mot. for Summ. J. ("Def.'s Motion") at 8, 11.)

3          1.      Dr. William Snider's Medical Opinion

4          Plaintiff argues that the ALJ: (a) "mischaracterized" Dr. Snider's July 25, 2007

5  medical note ("the July note"); and (b) improperly rejected Dr. Snider's June 8, 2007 RFC

6  assessment ("the June assessment"), and as a result arbitrarily omitted significant limitations

7  from plaintiff's RFC.[6]  (See Pl.'s Motion at 11.)  Specifically, plaintiff contends that the RFC

8  should have limited plaintiff's ability for fine finger movements, hand-eye coordinated

9  movements, and pushing/pulling movements to "occasionally," rather than "frequently."  (Id.)

10  The Commissioner does not deny that the ALJ rejected the June assessment.  Rather, the

11  Commissioner responds that the ALJ's RFC assessment is completely consistent with the July

12  note.  (Def.'s Motion at 8.)  The undersigned interprets this argument as attempting to support

13  the ALJ's characterization of the July note.  However, finding no support for the ALJ's

14  characterization of the July note or the rejection of the June assessment, the undersigned

15  concludes that plaintiff's argument is persuasive.

16          Plaintiff's medical records indicate that Dr. Snider has been plaintiff's treating

17  physician since August 2005.  (See AT 198.)  During this time period, Dr. Snider has

18  recommended various conservative treatment plans, including physical therapy, tennis-elbow

19  bands, and injections.  (AT 192, 194, 195, 220.)  When conservative treatment proved to be

20  ineffective, Dr. Snider recommended surgery.  (AT 220.)  On November 20, 2006, he performed

21  plaintiff's surgery—debridement of ulnar nerve with reposition and medial epicondylar release.

22  (AT 224.)  Plaintiff continued to see Dr. Snider following the surgery.  (See AT 42.)

23

24          [6]  Plaintiff's argument regarding mischaracterization apparently misunderstands the ALJ's
    findings.  Plaintiff argues that the ALJ mischaracterized the June assessment (see Pl.'s Motion at
25  11 n.2), when actually the ALJ does not reference the June assessment in his decision.  As the
    following discussion illustrates, the ALJ indeed mischaracterizes the nature of the July note by
26  representing that it was an assessment of plaintiff's functional limitations.

1          On June 8, 2007, Dr. Snider completed an "Attending Physician Statement."

2   (AT 286.)  The instructions for completing the form state that the purpose of the report is to

3   assist in making a disability determination.  (Id.)  Regarding plaintiff's physical capabilities, Dr.

4   Snider noted that plaintiff could sit, stand, and walk continuously.  (AT 287.)  Plaintiff could

5   perform fine finger movements, hand-eye coordinated movements, push and pull, and reach

6   above her shoulder only occasionally.  (Id.)  Dr. Snider also assessed plaintiff's ability to lift and

7   carry, while noting, without placing limits on frequency, that plaintiff should not lift or carry

8   more than 25 pounds.  (Id.)  Dr. Snider also noted that plaintiff could use both of her hands to

9   perform simple grasps, fine manipulation, and medium dexterity; plaintiff could not, however,

10  perform a power grip with either hand.  (AT 288.)  Regarding plaintiff's return to work, Dr.

11  Snider indicated that he had not yet advised plaintiff to return to work and that he expected

12  improvement in plaintiff's abilities approximately one year after her November 20, 2006 surgery.

13  (Id.)

14         On July 25, 2007, plaintiff visited Dr. Snider for a scheduled "followup for her

15  right elbow with lateral epicondylitis in the ulnar nerve distribution."  (AT 234.)  Dr. Snider

16  noted the following: (1) plaintiff continued to have decreased sensation; (2) plaintiff's range of

17  motion was more or less unchanged but was less than her previous visit; and (3) plaintiff was not

18  progressing greatly.  (Id.)  Dr. Snider also noted that plaintiff had given him a letter which asked

19  about the feasibility of plaintiff's return to work under the following conditions: "lifting less than

20  20 pounds occasionally and 10 pounds frequently.  Occasional standing and walking.  Frequent

21  sitting and occasional reaching about the shoulder level."  (Id.)  When plaintiff said that she felt

22  unable to perform this work because of lifting restrictions, Dr. Snider concurred.  (Id.)  He opined

23  that she could probably return to work if the work "would not be much overhead work or any

24  significant lifting involved.  Work would remain computer work and paperwork [and] if she can

25  do it at a slower pace than normal."  (Id.)  However, Dr. Snider's remarks suggest that he was

26  uncertain whether plaintiff should return to work even if there was no significant lifting and only

8

1  computer work and paperwork.[7]  (See Dr. Blum's Report, AT 257 (stating "Dr. Snider is not

2  certain that she would be able to handle it.").)

3       Turning to the applicable standards, medical opinions of three types of medical

4  sources are recognized in social security cases: "(1) those who treat the claimant (treating

5  physicians); (2) those who examine but do not treat the claimant (examining physicians); and

6  (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81

7  F.3d at 830.  Generally, a treating physician's opinion should be accorded more weight than

8  opinions of doctors who did not treat the claimant, and an examining physician's opinion is

9  entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or

10  examining physician's opinion is uncontradicted by another doctor, the Commissioner must

11  provide "clear and convincing" reasons for rejecting the treating physician's ultimate

12  conclusions. Id.

13       Because the Social Security Administration ("SSA") favors the opinion of a

14  treating physician over non-treating physicians, see 20 C.F.R. § 404.1527, if the treating or

15  examining doctor's medical opinion is contradicted by another doctor, the Commissioner must

16  provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons

17  must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574

18  F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of

19  the facts and conflicting clinical evidence, stating his interpretation thereof, and making

20  findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751

21  (9th Cir.1989)).  However, "[t]he ALJ must do more than offer his conclusions.  He must set

22

23       [7] Notably, Dr. Snider did not unequivocally state that plaintiff *should* return to work as the Commissioner argues.  (See Def.'s Motion at 8.)  Rather, Dr. Snider said that plaintiff "*could*

24  *probably*" return to work.  (AT 234.)  Further, Dr. Snider added the following caveat: "With the understanding that if unsuccessful that she be able to revert back to a former standing."  The

25  contents of the July note, taken as a whole, including Dr. Snider's cautionary tone, suggest that he was not certain that plaintiff's functional limitations would support a return to work.  (See id.

26  (stating "functions appear to be activity related and she does not appear to be progressing greatly").)

forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (citing Embrey, 849 F.2d at 421-22). Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Id. at 631-32 (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4.

a.      The July Note

In his decision denying plaintiff's disability benefits, the ALJ referred to the July note as Dr. Snider's "assessment." (AT 12.) The reference implies that the July note represents Dr. Snider's assessment of plaintiff's functional capabilities and limitations. (Id.) To support the ALJ's characterization of the July note, the Commissioner contends that the note updated the June assessment by "omitt[ing] any restriction to fine finger or pushing/pulling movements," and "explicitly [finding] that Plaintiff should perform paperwork and computer work." (Def.'s Motion at 8.) Contrary to the interpretations by the ALJ and the Commissioner, the undersigned finds that the July note does not constitute an updated assessment of plaintiff's functional limitations.

The July medical note does not establish that plaintiff was no longer restricted in occasional fine finger movements, hand-eye coordinated movements, above-the-shoulder reaching, or pushing and pulling movements. First, the July note is not inconsistent with the June assessment. Dr. Snider's June assessment stated that he had not yet advised plaintiff to return to work and that he did not expect her condition to improve prior to November 2007. (AT 287.) After examining plaintiff on July 25, 2007, that opinion was not contradicted because plaintiff had not improved and, in fact, her range of motion had decreased. (AT 234.) Further, as stated above and consistent with the June assessment, Dr. Snider was not certain that plaintiff

could handle returning to work.  (See AT 257.)  Second, the doctor's reference in his notes to the "return to work" letter is neither a diagnosis nor a statement of plaintiff's functional capacity.  Dr. Snider did not opine that the restrictions found in the letter were consistent with plaintiff's capabilities.  To the contrary, he noted that the restrictions contained within the letter were not restrictive enough and went on to note additional restrictions, i.e., only computer work and paperwork, no significant lifting, and not much overhead work.  The fact that he did not add all of the restrictions from the very recent June assessment does not suggest that the prior restrictions had been lifted.  The July note was made for the purpose of recording the doctor's impressions of and communications with his patient, not for the purpose of assessing plaintiff's functional limitations.  See Valentine, 574 F.3d at 691-92 (finding that a doctor's observation regarding recommended work conditions was neither a diagnosis nor a statement of the plaintiff's functional capacity because it was not intended to be such).  Finally, Dr. Snider's examination results on July 25, 2007, do not support a conclusion that Dr. Snider found plaintiff's capabilities to be improved.  The July note indicates that plaintiff's symptoms had worsened since the June assessment.  (See AT 234 ("Her function appears to be activity-related and she does not appear to be progressing greatly.  Her motion is recorded less than when she was in previously. . . .").)  Accordingly, the undersigned finds that the ALJ's representation of the July note as an assessment is a mischaracterizaton of the July note.  The Commissioner's interpretation of the July note as an updated assessment/opinion is equally unpersuasive.

### b.     The June Assessment

Plaintiff argues that the ALJ arbitrarily excluded the June assessment–critical opinion evidence–without any explanation whatsoever.  (Pl.'s Motion at 11.)  Because the undersigned finds no explanation for the ALJ's rejection of the June assessment, plaintiff's argument is well-taken.

Under social security rulings and Ninth Circuit precedent, the June assessment completed by plaintiff's treating physician ought to be given controlling weight if it is not

inconsistent with other substantial evidence in the case record.  Orn, 495 F.3d at 631 ("If a

treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record, [it will be given] controlling weight.'") (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration

in original).  Further, as plaintiff points out, even if the treating doctor's opinion is contradicted,

the ALJ may not reject this opinion without providing specific and legitimate reasons supported

by substantial evidence in the record.  Valentine, 574 F.3d at 692; Lester, 81 F.3d at 830-31; see

also 20 C.F.R. § 404.1527(d)(2).

Here, neither the ALJ nor the Commissioner has suggested that the June

assessment is either inadequately supported or inconsistent with substantial evidence in the

record.[8]  In fact, the ALJ does not reference the June assessment at all.  (See AT 8-14.)  The

Commissioner's only response to plaintiff's argument that "the ALJ rejected significant

limitations assessed by Dr. Snider without any discussion whatsoever" (Pl.'s Motion at 11) is his

assertion that the RFC is completely consistent with "the July 2007 opinion."  (Def.'s Motion at

8.)  This response is essentially non-responsive because whether the ALJ's RFC assessment is

consistent with the July note does not provide support for the ALJ's rejection of the June

assessment.

Because the ALJ made no mention of the June assessment and failed to make

findings setting forth specific, legitimate reasons for omitting it from his decision and RFC

determination, the omission constitutes legal error.  This error, by itself, warrants a remand to the

---

[8]  While the ALJ does not suggest that there are medical opinions of other doctors' which
are inconsistent with the June assessment, the undersigned does note one.  On May 23, 2006, Dr.
Dann, a nonexamining physician, completed an RFC assessment.  (AT 199-206.)  Dr. Dann's
RFC assessment concluded that plaintiff could engage in reaching, handling, and fingering
without limitation.  On the other hand, the June assessment limits plaintiff to occasional fine
finger and above-the-shoulder movements.  The two assessments are clearly inconsistent.
However, this inconsistency cannot provide support for rejecting the treating physician's June
assessment in its entirety because the "opinion of a nonexamining physician cannot by itself
constitute substantial evidence that justifies the rejection of the opinion of either an examining
physician or a treating physician."  Lester, 81 F.3d at 831.

agency for further proceedings.

           2.    Dr. Robert Blum's Medical Opinion

           Plaintiff argues that the ALJ failed to properly credit the functional limitations assessed by Robert Blum, M.D., an examining physician.  Specifically, plaintiff alleges that the ALJ failed to include Dr. Blum's medical findings, which stated in part that plaintiff "'would not be able to return to the type of work that she was doing at the time of her injury and would not be capable of prolonged sustained keyboarding, as was required of her.  She could keyboard for brief periods occasionally.'"  (Pl.'s Motion at 12 (quoting AT 267).)  The Commissioner responds that the ALJ did not reject this opinion but rather accepted Dr. Blum's clinical findings.  (Def.'s Motion at 9-10.)  The undersigned finds no indication in the ALJ's decision that the ALJ accepted Dr. Blum's medical opinions.

           Dr. Blum completed two Agreed Medical Examination reports wherein he reported his opinions and conclusions regarding plaintiff's industrial injury claim (i.e., worker's compensation claim).  (AT 238-54, 255-68.)  Those reports are dated March 19, 2007, and October 9, 2007.  In his March 2007 report, Dr. Blum found that plaintiff demonstrated weakness of grip on the right side.  (AT 245.)  Further, Dr. Blum observed that plaintiff "has very little motion of the right elbow and bends her arm and her body and neck in order to use her right arm to perform any significant activity involving self-care."  (AT 248.)  The ALJ did not reference either of the above findings anywhere in his decision.  In fact, the ALJ did not mention the March 2007 report at all.

           Regarding Dr. Blum's October 2007 report, the ALJ summarily and selectively related Dr. Blum's findings.  However, even the selected findings are not reflected in the ALJ's RFC determination.  (See AT 13 (noting Dr. Blum's finding that plaintiff would be limited from pushing or pulling with the right elbow, repetitive use of the right arm, and repetitive grasping with the right hand, yet concluding that plaintiff could frequently grasp).)  Moreover, the October 2007 report contains significant probative evidence not mentioned by the ALJ.  For example, Dr.

Blum found that plaintiff "has a residual disability to her right (dominant) upper extremity" (AT 266), and that plaintiff's "condition is permanent and stationary." (AT 265.) Additionally, Dr. Blum noted that based on the American Medical Association Guides, table 16-5, plaintiff appeared to have "partial sensory loss of the third, fourth, and fifth fingers of the right hand (ulnar dysfunction), and a partial sensory loss of the first and second fingers of the left hand (median dysfunction)." (AT 263-64.) The undersigned concludes that the ALJ's unexplained omission of Dr. Blum's medical opinions constitutes legal error.

An ALJ need not cite to every piece of evidence in the case record. See Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting that the ALJ need not discuss all evidence presented but must only explain why he rejected "significant probative evidence"). However, in the case of an examining physician, the ALJ is required to note whether he finds the physician's opinion controverted, and if so, what weight, if any, the ALJ assigned to the medical opinion evidence. See Tommasetti, 533 F.3d at 1041. Further, although the ALJ "'is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (per curiam)). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." Embrey, 849 F.2d at 422; see also Lingenfelter, 504 F.3d at 1038 n.10 ("[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it.").

Here, neither the ALJ nor the Commissioner indicates that Dr. Blum's March and

////

////

////

14

1  October medical reports were controverted by substantial evidence in the record.[9]  Instead, the

2  Commissioner first argues that the ALJ's RFC assessment is consistent with Dr. Blum's findings.

3  The Commissioner is mistaken.  Dr. Blum's findings that plaintiff demonstrated weakness of

4  grip in the right arm (AT 245), could keyboard for brief periods occasionally (AT 267), and

5  could not "use her right arm for more than minimal activity" (AT 252), are not consistent with

6  the ALJ's RFC assessment which finds that plaintiff can frequently reach below shoulder level,

7  grasp, and bilaterally finger.  (AT 13.)

8          The Commissioner next argues that the ALJ's RFC assessment is consistent with

9  Dr. Blum's prohibition against prolonged, repetitive typing because "the ALJ limited Plaintiff's

10  fine finger movement to frequent, defined as occurring one-third to two-thirds of the time.  SSR

11  83-10.  In contrast, synonyms for repetitive . . . include ceaseless, constant, and continual. [citing

12  an online thesaurus]."  (Def.'s Motion at 10.)  The argument concludes: "So, by definition, the

13  ALJ's limitation to frequent fine finger movements . . . precludes jobs requiring repetitive (i.e.,

14  ceaseless, constant, or continual) computer-work or keyboarding."  (Id.)  The undersigned is

15  unpersuaded by this argument.

16          It requires no citation to an online thesaurus to determine that the ALJ's RFC

17  determination is at odds with Dr. Blum's medical opinion.  SSR 83-10, cited by the

18  Commissioner for the definition of "frequent," also defines the term "occasionally."

19  "'Occasionally' means occurring from very little up to one-third of the time," while frequently

20

---

21          [9]  The undersigned notes that the ALJ may have found contrary evidence in the record.
      For example, in July 2008, plaintiff's treating physician Dr. Richard Cross, M.D., opined that
22  plaintiff showed a "[f]ull range of motion of the elbow [and] no instability to the elbow."
      (AT 271.)  The ALJ may have determined that Dr. Blum's medical opinion as to plaintiff's
23  elbow limitations deserved no weight in light of the treating physician's contrary opinion.  It is
      also possible that, based on Dr. Cross's opinion, the ALJ rejected all of Dr. Blum's medical
24  opinions.  However, the undersigned cannot guess as to how Dr. Cross's medical opinion was
      evaluated by the ALJ in this case.  To the contrary, it is the ALJ who must summarize the
25  conflicting clinical evidence, set out his interpretation of that evidence, and make findings which
      explain the ALJ's basis for rejecting any medical opinions.  See Magallanes, 881 F.2d at 751
26  (requiring a detailed summary of the facts and conflicting clinical evidence).

"means occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251, at *5 (Aug. 20, 1980).  Here, Dr. Blum found that plaintiff could keyboard for brief periods *occasionally*.  (AT 267.)  Occasionally and frequently are neither consistent nor synonymous under the relevant regulations.

Accordingly, the undersigned finds that the ALJ rejected Dr. Blum's medical opinions.  Because the ALJ rejected Dr. Blum's medical opinions without setting forth any specific and legitimate reasons for doing so, the undersigned concludes that the ALJ committed legal error warranting a remand for further proceedings.

3.    Dr. C.R. Dann's Medical Opinion

In addition to challenging the ALJ's treatment of the medical opinions of Drs. Snider and Blum, plaintiff similarly challenges the ALJ's unexplained rejection of the RFC assessment provided by a State agency nonexamining physician, Dr. C.R. Dann, M.D.

Dr. Dann opined that plaintiff could perform sedentary level work with no postural or manipulative limitations.  (AT 200.)  He also found that plaintiff could frequently lift, carry, push, and pull less than ten pounds, and occasionally lift, carry, push, and pull ten pounds. (Id.)  The ALJ made a finding that Dr. Dann's opinions "as they pertain to the claimant's impairments, show consistency with the record and are thus found persuasive by the undersigned." (AT 13.)  However, it is unclear how persuasive Dr. Dann's testimony was because the ALJ's RFC determination is materially inconsistent with Dr. Dann's medical opinion.  (Compare Dr. Dann's RFC Assessment, AT 199-206 (finding plaintiff's bilateral epicondylitis not severe and her functional capacity as capable of sedentary level work) with ALJ's Decision, AT 12-13 (finding plaintiff's bilateral epicondylitis severe and her functional capacity as capable of light level work).)

"When an administrative law judge considers findings of a State agency medical . . . consultant . . . the administrative law judge will evaluate the findings."  20 C.F.R. § 404.1527(f)(2)(i)-(ii).  Further, "unless a treating source's opinion is given controlling weight,

1  the administrative law judge must explain in the decision the weight given to the opinions of a

2  State agency medical . . . consultant." Id.

3          Applying these regulations, the undersigned concludes that the ALJ was required

4  to explain the weight given to Dr. Dann's RFC assessment because the ALJ did not give

5  controlling weight to the medical opinion of plaintiff's treating physician.  Yet, again, the ALJ

6  provided no explanation for rejecting Dr. Dann's medical opinion evidence.  Failure to explain

7  the weight given to Dr. Dann's opinion constitutes legal error.  See, e.g. McCloud v. Barnhart,

8  166 Fed. Appx. 410, 419 (11th Cir. 2006) (per curiam) (unpublished) ("Consequently, the ALJ

9  ran afoul of 20 C.F.R. § 404.1527(f)(2)(i)-(ii) when he did not explain the weight he gave to [the

10 state agency doctor's] opinions.").  However, as the Commissioner correctly argues, this error

11 would not have changed the outcome of the case and is therefore harmless error.

12         Harmless error has been found "when it was clear from the record that an ALJ's

13 error was inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885

14 (citing Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  "[T]he relevant

15 inquiry is not whether the ALJ would have made a different decision absent any error, it is

16 whether the ALJ's decision remains legally valid, despite such error." Carmickle v. Comm'r of

17 Soc. Sec., 533 F.3d 1155, 1163 (9th Cir. 2008).

18         Here, if the ALJ had credited Dr. Dann's medical opinion and assigned it

19 controlling weight, he would have found that plaintiff could engage in sedentary level work.[10]

20 (See AT 202-03 ("findings support capacity despite annoying sx for at least Sed level

21

_____

22      [10]  The applicable regulation, 20 C.F.R. § 416.967(a), defines "sedentary work" as
   follows:

23

24              (a) Sedentary work.  Sedentary work involves lifting no more than 10
                pounds at a time and occasionally lifting or carrying articles like docket
                files, ledgers, and small tools.  Although a sedentary job is defined as one

25              which involves sitting, a certain amount of walking and standing is often
                necessary in carrying out job duties.  Jobs are sedentary if walking and

26              standing are required occasionally and other sedentary criteria are met.

17

1   lift/carry").)  Because four of the six jobs that the ALJ relied on at step four (capacity to perform

2   past relevant work) are sedentary in exertion level, even if the ALJ had adopted Dr. Dann's

3   medical opinion it would not have changed the outcome of plaintiff's case.  (See AT 71-72.)

4   Accordingly, the undersigned finds that the ALJ's error with respect to Dr. Dann's medical

5   opinion is inconsequential to the ultimate nondisability determination.

6                        4.      The ALJ's Adverse Credibility Finding

7               Plaintiff next challenges the ALJ's decision to discount plaintiff's testimony.

8   Plaintiff argues that the medical evidence supports her subjective testimony.  (AT 12.)  The ALJ

9   did not agree.  Relying on a medical note authored by Dr. Cross, the ALJ found affirmative

10  evidence of malingering, a finding which plaintiff contends is not supported by reliable evidence

11  in the record.  (Pl.'s Motion at 17.)

12              Dr. Cross became plaintiff's treating physican after Dr. Snider retired and referred

13  plaintiff's case to Dr. Cross.  (See AT 271.)  After meeting with and examining plaintiff for the

14  first time, Dr. Cross's impression was that plaintiff did not seem well-motivated to return to

15  work.  (Id.)  Further, Dr. Cross noted "I think this patient again is at risk for magnifying her

16  symptoms because of her current situation from a job status standpoint."  (Id.)

17              Plaintiff contends that the ALJ erred in accepting Dr. Cross's observation as

18  reliable because "Dr. Cross jumped to this conclusion during his first appointment with

19  [plaintiff] without any legitimate reason for doing so."  (Pl.'s Motion at 17.)  The Commissioner

20  responds, and the undersigned agrees, that Dr. Cross provided legitimate reasons for his

21  observation.

22              Generally, "the ALJ can reject the claimant's testimony about the severity of her

23  symptoms only by offering specific, clear and convincing reasons for doing so."  Lingenfelter,

24  504 F.3d at 1035-36 (citations and quotation marks omitted).  "The ALJ must specifically

25  identify what testimony is credible and what testimony undermines the claimant's complaints."

26  Valentine, 574 F.3d at 693 (quotation marks omitted) (quoting Morgan v. Comm'r of Soc. Sec.

1    Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

2          However, as here, "[i]f there is affirmative evidence showing that the claimant is

3    malingering, the Commissioner's reasons for rejecting the claimant's testimony need not be

4    'clear and convincing.'" Socol v. Astrue, No. CV 07-05022 SH, 2008 WL 2705176, at *2 (C.D.

5    Cal. July 8, 2008) (unpublished) (citing Lester, 81 F.3d at 834); accord Brabbin v. Astrue, No.

6    CV 10-386 OP, 2011 WL 672603, at *7 (C.D. Cal. Feb. 16, 2011) ("'[A]ffirmative evidence

7    suggesting' that a claimant is malingering vitiates the applicability of a clear and convincing

8    standard of review.") (citing Schow v. Astrue, 272 Fed Appx. 647, 651, 654-55 (9th Cir. 2008)

9    (O'Scanilan, J., dissenting)); Carpenter v. Astrue, No. CV 09-1198 AGR, 2010 WL 2757214, at

10   *4 n.2 (C.D. Cal. July 12, 2010) (noting that the Ninth Circuit Court of Appeals has held that the

11   existence of affirmative evidence suggesting malingering suffices to support an adverse

12   credibility determination).  Moreover, if the ALJ's credibility finding is supported by substantial

13   evidence in the record, the court "may not engage in second-guessing." Thomas v. Barnhart, 278

14   F.3d 947, 959 (9th Cir. 2002).

15         Here, the ALJ pointed to specific, affirmative evidence suggesting that plaintiff

16   was malingering—Dr. Cross's medical note.[11]  First, Dr. Cross noted that plaintiff had not

17   returned to work in nearly two years.  (AT 271.)  Second, he noted plaintiff's remark that she

18   receives a pretty generous disability policy.  (Id.)  Third, Dr. Cross's examination of plaintiff

19   identified possible mild atrophy with hypothemar eminence, but no other significant clinical

20   findings.  (Id.)  Finally, Dr. Cross found that plaintiff had full range of motion of the elbow and

21   no instability of the elbow.  (Id.)  The inconsistency between plaintiff's statements and his

22   examinations led Dr. Cross to recommend a repeat nerve conduction study "to see if in fact there

23   is any late onset nerve conduction change."  (Id.)  Therefore, contrary to plaintiff's assertion, the

24

25         [11]  The ALJ found that "[p]ractitioners noted that at times, the claimant did not seem well
     motivated to return to work and would magnify her symptoms."  (AT 12.)  The undersigned
     notes that while the ALJ refers to *practitioners*, plural, the record establishes that only one

26   physician made such a note.  (See AT 271.)

undersigned finds that Dr. Cross's medical opinion was based on legitimate reasons which were explicitly stated within the note.

Accordingly, the undersigned finds no error in the ALJ's decision to discount plaintiff's subjective testimony in reliance on Dr. Cross's medical opinion.[12]  Thomas, 278 F.3d at 959 (noting that if the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing").

> 5.     The VE's Testimony

Finally, plaintiff claims that the ALJ failed to properly question the VE.  (See Pl.'s Motion at 18.)  The undersigned does not address this alleged error because the remand ordered herein is of a sort that will likely impact the ALJ's RFC assessment.  Moreover, because the remaining claim of error derives from the errors addressed above, the undersigned does not address this alleged error here.

////
////
////
////
////
////
////
////

---

[12]  However, although there is legitimate evidence of malingering, the ALJ committed error when he improperly discredited the medical opinion evidence discussed above.  Because these opinions relied in large part on objective evidence, clinical, and laboratory diagnostic findings, they cannot be rejected on the basis that they rely on plaintiff's discredited statements. Cf. Morgan, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'").  Therefore, on remand, after consideration of the erroneously omitted, relevant, probative medical opinion evidence, the ALJ should redetermine the extent to which the plaintiff's statements are credible.

IV.     <u>CONCLUSION</u>

By remanding this matter for further proceedings, the undersigned does not mean to suggest that the ultimate outcome should or should not be different.  Instead, the matter is remanded because the ALJ's decision is legally deficient for the reasons set forth herein.

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment is granted in part;

2.      The Commissioner's cross-motion for summary judgment is denied; and

3.      The Clerk is directed to enter a judgment in favor of plaintiff pursuant to sentence four of 28 U.S.C. § 405(g) and remand this matter to the Social Security Administration for further proceedings.

DATED:  March 29, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE